IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>REIKO ELIO PENUNURI,<br><br>Defendant. | **8:18CR152**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the undersigned magistrate judge on Defendant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. (Filing No. 397.) Pursuant to the Memorandum and Order entered by the district judge,[1] Defendant's motion was denied except as it pertained to Defendant's allegation that his trial counsel failed to file a notice of appeal as he requested. This issue was referred to the undersigned magistrate judge to appoint counsel, hold an evidentiary hearing, and submit a findings and recommendation to the district court judge. (Filing No. 417.)

The undersigned appointed counsel (Filing No. 420) and then held an evidentiary hearing on Defendant's §2255 motion on November 30, 2022. A transcript of the proceedings has been filed and the motion is ripe for disposition. After hearing the testimony from Defendant and his trial counsel, and in assessing their credibility, the undersigned finds Defendant did not direct his attorney to file an appeal and will therefore recommend that the remainder of Defendant's § 2255 motion be denied.

---

[1] The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska

## BACKGROUND

On June 18, 2018, Defendant was indicted on charges of (1) conspiracy to distribute methamphetamine, (2) distribution of methamphetamine, and (3) use of facilities in interstate commerce in aid of racketeering. Defendant signed a Petition to Enter a Plea of Guilty and Plea Agreement on September 22, 2020. (Filing No. 363.) The Plea Agreement contained a waiver of right to appeal provision. (Filing No. 363.) A change of plea hearing was held before the undersigned on October 20, 2020. (Filing No. 361.) Defendant pleaded guilty to conspiring to distribute methamphetamine and using facilities in interstate commerce in aid of racketeering. In exchange for his guilty plea, the government agreed to dismiss the distribution charges. The Plea Agreement was an 11(c)(1)(C) plea agreement in which the parties agreed that Defendant should receive a sentence of 240 months.

On January 13, 2021, Judge Buescher sentenced Defendant to 240 months' incarceration on the conspiracy charge and 60 months' incarceration on the racketeering charge, to be served concurrently, pursuant to the parties' 11(c)(1)(C) Plea Agreement. On December 13, 2021, Defendant filed a Notice of Appeal, Filing No. 382, which the Eighth Circuit Court of Appeals dismissed as untimely on December 23, 2021. (Filing No. 395.)

Defendant filed the instant § 2255 motion on January 14, 2022, asking the Court to vacate his sentence or allow him to withdraw his guilty plea. Defendant's motion was largely based on his contention that he received ineffective assistance of counsel. Defendant claimed he received ineffective assistance of counsel because his counsel: (1) failed to move to dismiss his "fatally defective" indictment; (2) failed to move for suppression of certain evidence; (3) failed to properly advise him of the nature of his case and coerced him into pleading guilty; (4) failed to make certain objections to the Presentence Investigation Report; and (5) failed to file a notice of appeal which Defendant allegedly requested.

On June 13, 2022, Judge Buescher denied Defendant's § 2255 motion, except as to Defendant's claim that counsel was ineffective in failing to file a notice of appeal. (Filing No. 417.) Judge Buescher concluded that the question of whether Defendant timely directed counsel to file an appeal required a credibility determination before a decision could be reached regarding that issue. Judge Buescher referred the matter to the undersigned to appoint counsel and to hold

an evidentiary hearing regarding the narrow issue of credibility. The undersigned held an evidentiary hearing regarding the matter on November 30, 2022.

## HEARING TESTIMONY

Defendant's former counsel, Andrew Wilson ("Mr. Wilson"), who Defendant claims was ineffective by not filing a notice of appeal after he told him to do so, testified at the evidentiary hearing. Mr. Wilson was Defendant's appointed CJA counsel. (TR. 23.) Mr. Wilson was appointed at the time of Defendant's initial appearance and arraignment in this Court and represented Defendant through his sentencing on January 13, 2021. (TR. 23.)

Mr. Wilson testified that Defendant was held in Hall County jail until his sentencing, and that he made quite a few trips to the jail to meet with Defendant during that time. (TR. 18; TR. 24.) Mr. Wilson testified that 99% of his communications with Defendant occurred in person. (TR. 34.) Defendant agreed that most of his communications with Mr. Wilson were in person. (TR. 38.) Mr. Wilson stated that he did not have any one-on-one meetings with Defendant following sentencing. (TR. 19.)

Defendant testified he did not speak to Mr. Wilson very often by telephone because it was very expensive to call from the jail and Mr. Wilson would not accept his collect calls. (TR. 38.) Mr. Wilson stated that he took telephone calls from Defendant while he was held in the Hall County jail but could not recall the substance of the conversations. (TR. 24.) Mr. Wilson explained that those telephone calls were not necessarily reflected in his billing statements. (TR. 34.) Mr. Wilson testified that, in his practice, if a client calls from jail, he takes the call if he is in the office. (TR. 16; TR. 73.)

Defendant stated he was not able to establish email communication with Mr. Wilson because Mr. Wilson did not accept his email requests. (TR. 41.) Defendant explained that the jail email system requires recipients to agree to accept emails before email messages can be exchanged. (TR. 52.) Mr. Wilson testified he did not receive an invitation to email with the Defendant and if he would have, he would have accepted. (TR. 74.) Defendant testified he does not have any record of his attempts to email Mr. Wilson because the marshals misplaced his property. (TR. 53.)

3

Mr. Wilson indicated that around August or September of 2021, he went to the Hall County jail to visit Defendant and recommended that Defendant accept the Plea Agreement offered by the government. (TR. 25-26.) Mr. Wilson testified that he went through the Plea Agreement with Defendant paragraph by paragraph, page by page. (TR. 28.) Mr. Wilson stated he discussed the provision in the Plea Agreement with Defendant which stated Defendant was waiving his right to appeal and that he also discussed with Defendant his right to appeal throughout the process of the plea negotiations. (TR. 5.) Mr. Wilson stated that Defendant did not raise any questions about his right to appeal or a § 2255 motion. (TR. 28.).

Mr. Wilson stated he does not recall if he had a specific conversation with Defendant about his right to appeal at the time of his sentencing, but that it is his normal practice to discuss this with his clients. (TR. 5-6; TR. 19.) The notes from Mr. Wilson's file for Defendant do not reflect that Mr. Wilson had a specific discussion with Defendant about his right to appeal at his sentencing. (TR. 7-8.) Mr. Wilson did not send Defendant any letters about his right to appeal. (TR. 11; Ex. 102, Ex. 104, Ex. 105.) Mr. Wilson testified that most of the time on plea cases he does not send a letter because things are already worked out ahead of time through discussions with his client. (TR. 20.)

Contrary to Mr. Wilson's testimony, Defendant testified that Mr. Wilson only gave him a summary of the Plea Agreement without explaining it to him. (TR. 59; TR. 61.) Defendant testified he could not recall if the Plea Agreement contained an appeal waiver provision because he could not read the Plea Agreement due to his bad vision. (TR. 58-59.) Mr. Wilson testified that Defendant never indicated to him that he could not read the Plea Agreement. (TR. 74.) Defendant acknowledged he did not state that he had an eye condition at his change of plea hearing or at sentencing. (TR. 59.) Defendant testified he did not bring this up because he needed to make sure he secured the plea because he was afraid of getting a life sentence. (TR. 60.)

Defendant testified that on or about January 15, 2021, he wrote Mr. Wilson a letter stating that he wanted to appeal and that he had made a mistake because he is innocent. (TR. 40; TR. 41.) Defendant indicated he wrote the letter a couple of days after sentencing and before he was transferred from the jail to Leavenworth, Kansas, which occurred a week later. (TR. 40; TR. 43.) Defendant testified he does not have a copy of the letter because the marshals misplaced his property when he was transferred out of the Hall County jail. (TR. 54.) Mr. Wilson testified that

4

he did not receive this letter and that the only correspondence he received from Defendant post-sentencing was a letter dated August 17, 2021. (TR. 73; Ex. 103.)

Defendant testified that his daughter, Carissia, and his friend, Sheila, also attempted to contact Mr. Wilson numerous times on Defendant's behalf following his sentencing. (TR. 39-40; TR. 50.) Defendant testified Mr. Wilson would not return their messages. (TR. 40.) Defendant stated that he asked Carissia to contact Mr. Wilson, and after Mr. Wilson did not respond to Carissia's messages, he asked Carissia to contact Sheila so Sheila could try to reach Mr. Wilson. (TR. 40.) Neither Carissia nor Sheila testified at the evidentiary hearing or provided an affidavit on Defendant's behalf. Mr. Wilson testified he did not speak to Carissia or Sheila after Defendant's sentencing. (TR. 72-73.)

Defendant testified that he may have attempted to call Mr. Wilson once or twice following his sentencing but could not recall for certain if he did so. (TR. 49; TR. 67.) Defendant stated that Mr. Wilson had made it clear to him that he would not discuss things over the phone or over correspondence. (TR. 49.) Defendant stated he did not leave any messages over the phone regarding an appeal on his own behalf because he knew Mr. Wilson would not take his phone calls. (TR. 40.) Mr. Wilson testified that to his knowledge, he did not receive any calls from Defendant after his sentencing. (TR. 31.)

Defendant testified he became aware that an appeal had not been filed on his behalf approximately 30 days after he arrived at the federal correctional institute in Victorville on July 9, 2021. (TR. 43; TR. 45-46.)

Defendant sent Mr. Wilson a letter on or about August 17, 2021. (Ex. 103.) The letter started out with pleasantries, with Defendant expressing he hoped that all was well with Mr. Wilson. Defendant also informed Mr. Wilson what prison he was in and when he arrived there. (Ex. 103.) The letter further stated, in part: "Send me the following: Indictment, case dockets, and PSI. Anything else that may be of help to further research for my recordkeeping." (Ex. 103.) It also provided: "Send me info on the 2255." (Ex. 103.) The letter does not mention a notice of appeal. (Ex. 103.) Mr. Wilson responded with a letter dated January 14, 2022 but did not provide Defendant with any of the documents he requested or any information regarding a § 2255 motion. (TR. 14; Ex. 102.) Mr. Wilson testified he interpreted Defendant's letter to be a request for his

5

file and, due to the agreement he had with the United States Attorney's Office, he could not provide the information Defendant requested. (TR. 15-16.) The deadline for Mr. Wilson to file a § 2255 motion was January 14, 2022. (TR. 16.) Mr. Wilson explained that he did not respond to Defendant sooner because there were significant changes going on in his firm due to people leaving the practice. (TR. 23.) Mr. Wilson testified that if Defendant had instructed him to file a notice of appeal, he would have filed it. (TR. 32.)

Mr. Wilson testified that Defendant never expressed to him that he was dissatisfied with his representation. (TR. 29.) Defendant acknowledged that he did not voice any concerns about Mr. Wilson's representation at the change of plea hearing. (TR. 56.) Defendant testified that he did not do so because he was not in the right state of mind and on medication. (TR. 56.) Defendant stated that he felt at the time that he had to convince the judge to accept his plea. (TR. 56.)

## DISCUSSION

Defendant claims that he instructed Mr. Wilson to file a notice of appeal, but Mr. Wilson did not do so. "[A]n attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance entitling petitioner to section 2255 relief, no inquiry into prejudice or likely success on appeal being necessary." *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). "Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so." *United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014).

However, a defendant wishing to appeal "must have made manifest [his] desire to appeal by expressly instructing [his] attorney to appeal." *Nupdal v. United States*, 666 F.3d 1074, 1076 (8th Cir. 2012). "A bare assertion by the petitioner that he made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012) (quotation omitted). "A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *Deroo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted).

Defendant contends he wrote Mr. Wilson a letter on or around January 15, 2021, instructing Mr. Wilson to file an appeal. Defendant was unable, however, to produce a copy of the letter or to produce any other information indicating that such a letter ever existed. Defendant claims the

6

marshals misplaced his property when he was transferred from the Hall County jail. Still, Defendant did not produce any evidence that his property was misplaced. Mr. Wilson denies that he ever received such a letter. Mr. Wilson's correspondence information from Defendant's file corroborates his testimony that he did not receive any such letter.

Other than Defendant's supposed January 15, 2021 letter, Defendant acknowledges he personally did not have any contact with Mr. Wilson about an appeal or otherwise until his letter of August, 2021. Defendant could not recall if he called Mr. Wilson by phone after sentencing but testified he did not leave any messages over the phone for Mr. Wilson regarding an appeal. Mr. Wilson's testimony in this regard is consistent with Defendant's testimony. Mr. Wilson testified that to his knowledge, he did not receive any calls from Defendant after sentencing.

Defendant maintains, however, that he asked his friend, Sheila, and his daughter, Carissia, to contact Mr. Wilson after his sentencing. Defendant claims Sheila and Carissia were unable to reach Mr. Wilson. However, other than Defendant's bare assertions in this regard, there is no evidence that either of these individuals attempted to contact Mr. Wilson, nor is there evidence that these individuals left a message instructing Mr. Wilson to contact Defendant or file a notice of appeal. Sheila and Carissia did not appear at the evidentiary hearing and no affidavits from them were offered at the evidentiary hearing. Mr. Wilson testified that he did not speak to Sheila or Carissia following Defendant's sentencing. There is no evidence contradicting Mr. Wilson's testimony that he did not speak to these individuals.

Defendant did contact Mr. Wilson by letter in August, 2021. The letter asked Mr. Wilson to send Defendant the Indictment, case dockets, PSI, and anything else that could help Defendant research and for his records. It further stated: "Send me info on the 2255." The letter did not, however, inquire why Mr. Wilson had not filed an appeal, even though, by that time, Defendant admittedly knew that Mr. Wilson had not filed an appeal. The lack of inquiry regarding an appeal in the August letter, as well as the pleasant tone of the letter, seriously undermines Defendant's contention that Mr. Wilson did not follow his instruction to file an appeal. It seems to the undersigned that if Mr. Wilson had not followed Defendant's instruction in this regard, Defendant would have mentioned it in the letter.

Further diminishing Defendant's credibility is the fact that Defendant's Plea Agreement contained a provision in which Defendant waived his right to appeal, except in very limited circumstances. Seemingly to explain this inconsistency, Defendant claims he did not know about the appeal waiver or what was contained in the Plea Agreement. Defendant claims he had vision problems which prevented him from seeing and reading the Plea Agreement. The undersigned finds Defendant's statements regarding his lack of knowledge of the appeal waiver or understanding of the Plea Agreement entirely unsupported and contradicted by the record.

At his change of plea hearing, the undersigned discussed the Plea Agreement with Defendant in detail and Defendant stated he understood the contents of the Plea Agreement. ([Filing No. 366](.).) The undersigned specifically told Defendant that under the Plea Agreement, he was waiving or giving up his right to appeal. ([Filing No. 366](.).) Defendant stated he understood he was giving up that right. ([Filing No. 366](.).) The undersigned also asked Defendant if he read the Plea Agreement before he signed it and if he understood it. Defendant responded "yes" to both questions. Additionally, the undersigned asked Defendant at the end of his plea if he had any questions of his attorney or the Court concerning his plea of guilty, to which Defendant responded "no." ([Filing No. 366](.).) Defendant never expressed during his plea that he did not understand what was contained in the Plea Agreement or that he had vision problems that prevented him from seeing or reading the Plea Agreement. ([Filing No. 366](.).)

Defendant contends Mr. Wilson did not explain or go through the entire Plea Agreement with him and only gave him a summary of the Plea Agreement. However, at the change of plea hearing, Mr. Wilson explained that he went over the terms and conditions of the Plea Agreement with Defendant. In response to the undersigned's questions about the matter, Defendant agreed with Mr. Wilson's explanation as to what occurred in that regard. Further, in response to the undersigned's questions during the change of plea hearing, Defendant stated that if he had questions about the Plea Agreement, he asked his attorney and that his attorney answered his questions to his satisfaction. The undersigned asked Defendant during his plea whether he was satisfied with the representation of his attorney, to which he responded "yes." The undersigned further asked Defendant if he had any complaints or objections concerning the manner in which Mr. Wilson represented him, to which Defendant responded "no." ([Filing No. 366](.).) This is entirely consistent with Mr. Wilson's testimony that he went through the Plea Agreement with

8

Defendant page by page, and that Defendant never expressed any concerns about his representation.

Defendant claims he did not raise any concerns about Mr. Wilson's representation at the change of plea hearing because he was not in the right state of mind and on medication. However, the undersigned specifically asked Defendant during the change of plea whether he was taking any medication. Defendant indicated he was taking medication, but in response to the undersigned's questions about the matter, stated that the medication was not affecting his mind, his ability to think clearly, or his ability to make decisions during the plea hearing. (Filing No. 366.) The undersigned also asked Defendant if there were any other substances that were affecting, in any way, his mind, his ability to think and make decisions, or his ability to think clearly during the plea hearing. Defendant responded there were not. (Filing No. 366.) It was clear to the undersigned during the change of plea hearing that Defendant read and understood what was contained in the Plea Agreement and knew the rights he was giving up by entering the plea. Defendant's testimony at the evidentiary hearing on his § 2255 motion that he did not know the Plea Agreement contained a waiver of appeal and that he did not understand the Plea Agreement is not credible. Mr. Wilson's testimony that he explained the contents of the Plea Agreement to Defendant in detail is credible and entirely supported by the record.

Based on the evidence and testimony presented at the evidentiary hearing, the undersigned finds Defendant's assertion that he instructed Mr. Wilson to file a notice of appeal is not credible. The undersigned further finds Mr. Wilson's assertion that he was never instructed to file an appeal is credible. The undersigned concludes that Defendant did not instruct Mr. Wilson to file an appeal. Because that is the only remaining issue in Defendant's § 2255 motion, the undersigned will recommend that Defendant's § 2255 motion be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** to United States District Court Judge Brian C. Buescher that Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Filing No. 397) be denied.

Dated this 25th day of January, 2023.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.